Filed 9/28/16  P. v. Moore CA3
On remand

## <u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C070693 |
| Plaintiff and Respondent, | (Super. Ct. No. SF116919B) |
| v. | OPINION ON REMAND |
| MARQUIS DOMINIQUE MOORE, | |
| Defendant and Appellant. | |

This opinion issues following remand from the state Supreme Court directing us to vacate our original opinion and to reconsider the appeal in light of *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).

Defendant Marquis Dominique Moore[1] was 17 years old at the time of his criminal escapade with codefendant Darrell Monte Tillis[2] in 2010.  A jury convicted

---

[1]   The abstract of judgment reflects the spelling of defendant Moore's first name as "Marquise."  In his pro. per. notice of appeal, he sets forth his full name as "Marquis Dominique Moore" and this should be reflected on an amended abstract.

[2]   Following issuance of our original opinion and while the matter was being reviewed by the Supreme Court, the Supreme Court granted codefendant Tillis's motion for

1

Moore—based on three criminal escapades involving eight charges—of three counts of robbery, two counts of assault with a firearm, one count of attempted murder, one count of burglary, and one count of false imprisonment; the jury also found true various gun use enhancements, among other enhancements. (Pen. Code, §§ 211, 245, subd. (a)(2), 664/187, 459, 237, subd. (a) & 12022.53, subds. (b), (c), (d), respectively.)[3]

On appeal, Moore raises only sentencing issues. We now affirm his judgment, but we remand to the trial court for the limited purposes of determining whether Moore was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing, and, if not, to cure that deficiency.

Given the nature of the issues on appeal, detailing the facts is unnecessary. Suffice it to say, at this point, that on July 18, 2010, Moore and Tillis robbed a man on the street, after Moore hit the man in the head with a gun, demanded money, and directed Tillis to go through the man's pockets. As Moore and Tillis fled, Moore shot the gun twice into the air. (Both defendants were found guilty on count 3 [robbery] and count 4 [assault with a firearm].)

On July 22, 2010, Moore, while masked, robbed an ice cream shop owner at gunpoint, after having earlier conversed, unmasked, with the owner. After the owner made a disparaging comment to Moore and said she recognized him, Moore shot her in the chest and then left while pointing the gun at her head. (Moore was found guilty of count 8 [robbery], count 9 [attempted murder], and count 10 [assault with a firearm].)

And, on September 5, 2010, Moore, after conversing flirtatiously with a woman, later entered her apartment on a pretext, and robbed her at gunpoint. During this ordeal,

---

severance and we issued a remittitur as to him only. As such, this opinion on remand addresses only those claims raised by defendant Moore.

[3] Undesignated statutory references are to the Penal Code.

Moore grabbed her leg and pulled her toward her bedroom, but she managed to elude his grasp. (Moore was found guilty of count 13 [robbery], count 14 [burglary], and count 15 [felony false imprisonment].)

We will set forth additional facts in discussing the issues.

## DISCUSSION

The trial court sentenced Moore to an unstayed aggregate term of 83 years to life, comprised as follows: an upper term of nine years for the attempted murder (count 9), plus a consecutive enhancement sentence of 25 years to life for discharging a firearm causing great bodily injury (§ 12022.53, subd. (d)); consecutive sentences of one year each for two of the robbery convictions (counts 3 and 8), plus consecutive gun use enhancements of 20 years and 25 years to life for those two counts, respectively (§ 12022.53, subds. (c), (d), respectively); and, finally, consecutive terms of one year four months for the burglary (count 14) and eight months for the false imprisonment (count 15).

Before we get to Moore's contention concerning his de facto life without parole (LWOP) sentence, we must provide some legal background. Beginning with *Graham v. Florida* (2010) 560 U.S. 48 [176 L.Ed.2d 825] (*Graham*), followed by *Miller v. Alabama* (2012) 567 U.S. ___ [183 L.Ed.2d 407] (*Miller*), and concluding with *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), the United States and California Supreme Courts have explored, under the constitutional prohibitions on cruel and/or unusual punishment, the limits of government's power to punish minors (juveniles) tried as adults.

In *Graham*, the United States Supreme Court concluded that the "Constitution prohibits the imposition of [an LWOP] sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it

3

imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." (*Graham*, *supra*, 560 U.S. at p. 82 [176 L.Ed.2d at p. 850].)

In *Miller*, the United States Supreme Court, after noting that LWOP is the harshest penalty constitutionally available for juveniles, concluded that a sentencing court must "follow a certain process" before imposing this penalty. (*Miller*, *supra*, 567 U.S. at p. ___ [183 L.Ed.2d at p. 426].) The sentencing court must consider the offender's youth and the hallmark features of youth that are indicative of lesser culpability and greater capacity for change compared to adults (among them, immaturity, impetuosity, and failure to appreciate risks and consequences); and consider, in an individualized way, the nature of the offender and the offense (for example, as relevant, the offender's background and upbringing, mental and emotional development, and possibility of rehabilitation). (*Id.* at pp. ___-___ [183 L.Ed.2d at pp. 421-423].)

And, in *Caballero*, the California Supreme Court concluded that *Graham* and *Miller* applied to a de facto (functionally equivalent) LWOP sentence of 110 years to life imposed on a 16-year-old defendant convicted of three counts of attempted murder. (*Caballero*, *supra*, 55 Cal.4th at pp. 265, 268-269.) The *Caballero* court urged "the Legislature to enact legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity." (*Caballero*, at p. 269, fn. 5.)

The Legislature took the state Supreme Court's advice and enacted Senate Bill No. 260 (2013-2014 Reg. Sess.) sections 1 and 4 (Senate Bill No. 260), which added section 3051 to the Penal Code. As relevant here, section 3051 provides an opportunity to juveniles, who are sentenced to an LWOP term for nonhomicide offense(s), to obtain release on a showing of rehabilitation and maturity after serving a prescribed term of

4

confinement. Under section 3051, a nonhomicide juvenile offender whose sentence is 25 years to life or greater is "eligible for release on parole by the [Board of Parole Hearings, no later than] during his or her 25th year of incarceration at a youth offender parole hearing . . . ." (§ 3051, subds. (b)(3), (e).)

Moore contends his sentence of 83 years to life amounts to an unconstitutionally cruel and/or unusual punishment, because it is a de facto LWOP sentence that was imposed without considering his individual characteristics as a juvenile offender and without providing him a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. Moore claims his case must be remanded for a new sentencing hearing along these lines.

The People counter that Moore's sentence is not cruel and/or unusual because section 3051 makes him eligible for parole during his 25th year of incarceration. Consequently, a remand for resentencing is unnecessary.

The dispositive question, then, reduces to—Does the legislative remedy provided in section 3051 correct the constitutional violation in sentencing that the People concede is present here? (The trial court did not have the benefit of *Miller* and *Caballero*, which were decided after the court sentenced Moore in April 2012.) Based on the Supreme Court's decision in *Franklin*, *supra*, 63 Cal.4th 261, we answer this question, "Yes."

In *Franklin*, the Supreme Court determined the juvenile defendant's constitutional challenge to his 50-year-to-life sentence for a homicide and related firearm enhancement was mooted by the Legislature's passage of sections 3051 and 4801. (*Franklin*, *supra*, 63 Cal.4th at pp. 268, 272-273.) In reaching this conclusion, *Franklin* reasoned that passage of the new provisions set forth in sections 3051 and 4801 superseded the defendant's sentence, thereby entitling him to a parole hearing in his 25th year in prison and mooting any infirmity in his sentence under *Miller*. (*Franklin*, at pp. 276-277.) This is especially true in light of the mandate of section 4801, subdivision (c) that "requires

5

the Board [of Parole Hearings] not just to consider but to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law,' " thereby providing the defendant with "a meaningful opportunity for release no more than 25 years into their incarceration." (*Franklin*, at p. 277.) The effect of section 3051 is to render all eligible juvenile offenders, including Moore, eligible for parole after a maximum of 25 years in prison, regardless of the sentence originally imposed, and regardless of the date of conviction. (*Franklin*, at pp. 277-278.)

Here, the effect of sections 3051 and 4801 is to alter Moore's 83-year-to-life sentence to a life sentence that affords him a meaningful opportunity for release during his 25th year of incarceration; his sentence is now "neither LWOP nor its functional equivalent." (*Franklin*, *supra*, 63 Cal.4th at pp. 279-280.) As such, no *Miller* claim arises and Moore's constitutional challenge to his sentence has been rendered moot by enactment of Senate Bill No. 260.

However, as in *Franklin*, we deem it necessary to remand this matter for a limited hearing to determine whether Moore had sufficient opportunity to place on the record the kinds of information sections 3051 and 4801 deem relevant at youth offender parole hearings. (*Franklin*, *supra*, 63 Cal.4th at p. 284.) For, the directive of section 4801, subdivision (c) that the board of parole hearings " 'shall give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity' " necessarily means "information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate [that] consideration." (*Franklin*, at p. 283.) If the trial court determines Moore did not have an adequate opportunity to make such a record, it may receive submissions and, if appropriate, testimony that may be relevant at his eventual youth offender parole hearing,

and the People may place on the record any evidence bearing on the influence of youth-related factors as discussed in *Franklin*. (See *id.* at pp. 283-284.)

We also address the two other sentencing issues raised by Moore. First, the trial court did not err prejudicially in sentencing Moore to the upper term of nine years for the attempted murder (count 9). Assuming for the sake of argument the trial court erred in using the same fact to impose both the upper term and a sentence enhancement (i.e., improper dual use of facts—here, the facts of gun use and infliction of great bodily injury), the trial court also cited to several other aggravating factors supported in the record. (See *People v. Osband* (1996) 13 Cal.4th 622, 728-729 [a single aggravating factor is sufficient to impose an upper term].) And, second, the trial court properly declined to stay, under section 654, Moore's false imprisonment sentence of eight months (count 15) because there is substantial evidence he committed this offense with a different intent and objective than the burglary-robbery accompanying it (counts 14, 13, respectively). (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) Given the prelude of Moore's flirtatious, sexual conversation with the female victim, and later Moore's act of dragging the victim toward her bedroom, it reasonably can be inferred (as the victim inferred, who managed to free herself from Moore's clutches) that the false imprisonment was committed for purposes beyond the burglary-robbery, i.e., rape.

Finally, our resolution of this appeal renders moot Moore's claim that his counsel acted ineffectively to the extent Moore's sentencing issues have not been preserved for appellate review.

## DISPOSITION

The judgment for Moore is affirmed, but the case is remanded to the trial court for a limited hearing to determine whether he was afforded an adequate opportunity to present evidence that sections 3051 and 4801 deem relevant at youth offender parole hearings. If it concludes Moore was not provided that opportunity, the trial court is

7

directed to conduct a hearing and to accept evidence relevant to youth-related factors in a manner consistent with that described in *Franklin*, *supra*, 63 Cal.4th at pages 283 to 284. The clerk of the trial court is directed to prepare an amended abstract of judgment reflecting the proper spelling of Moore's name as "Marquis Dominique Moore" and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

                                            BUTZ                   , J.



We concur:


        NICHOLSON        , Acting P. J.


        HULL              , J.


8